IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LT. IBRAHIM LUGO-MATOS, *et al.*,

**Plaintiffs,**

v.

COMMONWEALTH OF PUERTO RICO POLICE DEPARTMENT, *et al.*,

**Defendants.**

**CIVIL NO.** 14-1839 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Plaintiffs Lieutenant Ibrahim Lugo-Matos ("Lt. Lugo") and his wife, Brenda Anglada Rivera (collectively "Plaintiffs"), brought this action against Lt. Lugo's employer, the Commonwealth of Puerto Rico Police Department ("PRPD"), and individual employees Superintendent Jose L. Caldero Lopez ("Superintendent Caldero"), Captain Jose I. Rivera Torres ("Capt. Rivera"), Lieutenant Victor M. Reyes Flores ("Lt. Reyes"), Colonel Hector Agosto Rodriguez ("Col. Agosto"), and several unknown defendants, (collectively "Individual Defendants").[1] Docket No. 1. Plaintiffs allege deprivation of Lt. Lugo's First, Fifth, and Fourteenth Amendments rights under 42 U.S.C. § 1983 et seq. ("Section 1983"); and gender discrimination, sexual harassment, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiffs also seek supplemental jurisdiction on state law

[1] Plaintiffs identify "A, B, C, D, E, F, and G" as unknown defendants that are joint and severally liable for the wrongful acts committed against Plaintiffs, and "U, V, W, X, Y, and Z" who are insurance companies which have insurance policies with Defendants. Docket No. 1, at 5.

claims under Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194 et seq. ("Law 115") (retaliation); Law 100 of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 et seq. ("Law 100") (sex discrimination); Law 69 of July 6, 1985, P.R. Laws Ann., tit. 29, § 1321 et seq. ("Law 69") (gender discrimination); Law 17 of April 1988, P.R. Laws Ann. tit. 29, §§ 155–155m ("Law 17") (sexual harassment); and Article 1802 of the Commonwealth of P.R. Civil Code, P.R. Laws Ann., tit. 31, § 5141 ("Article 1802") (general tort statute). The Complaint was filed on November 20, 2014. Docket No. 1.

Before the Court is Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the complaint on various grounds.[2] Docket No. 13. Plaintiffs timely opposed Defendants' Motion to Dismiss. Docket No. 20. After carefully reviewing the facts and law Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Background[3]

On March 9, 1995 Plaintiff Lt. Lugo joined the PRPD. Docket No. 1, at 6. From 1995 until 2009, Lt. Lugo was assigned to the Puerto Rico Capitol where he ascended to the rank of Sergeant. *Id.* On April 2009, Lt. Lugo was transferred to the Highway Patrol Bureau in the town of Salinas as Shifts Supervisor. *Id.* Lt. Lugo was promoted to Lieutenant in 2011 and transferred to the town of Aibonito as Director of the Traffic Division. *Id.* In February 2012, Capt. Rivera

[2] The Court defines "Defendants" collectively as the PRPD and Individual Defendants.

[3] The facts are borrowed from Plaintiffs' complaint. For purposes of a 12(b)(6) motion to dismiss "we assume the truth of all well-pleaded facts . . . ." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 104 (1st Cir. 2015) (quoting *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

transferred Lt. Lugo back to Salinas Highway Patrol to handle personnel performance, discipline and operational issues. *Id.* After this transfer back to Salinas, Agent Lorna Padilla Cartagena ("Agent Padilla"), who worked at the Salinas Highway Patrol Bureau, stated that she would ruin Lt. Lugo's career in the force. *Id.* Lt. Lugo's problems started when Agent Padilla filed two gender discrimination complaints against him on July 2012. *Id.* at 6-7. Both claims received tracking numbers. *Id.* at 7. On December 2012, Sergeant Rosaura Santa Benitez ("Sgt. Santa"), issued her findings and recommendations on Agent Padilla's July 2012 complaint and submitted a copy to Colonel Jose L. Ramirez Ramos, ("Col. Ramirez"), who was the Auxiliary Superintendent of Professional Responsibility on this claim. *Id.* at 7. In sum, Sgt. Santa concluded that Agent Padilla had fabricated the complaint against Lt. Lugo. *Id.* at 7. Sgt. Santa also found that Agent Padilla had filed similar meritless complaints in the past and that her behavior was creating a problematic work environment for Lt. Lugo. *Id.* Sgt. Santa recommended that Agent Padilla be removed from the Salinas Highway Patrol Bureau. *Id.* at 7. However, such instructions were not followed by the Superintendent of Professional Responsibility. *Id.* at 7-8. Rather, in a meeting held in February 2013, in the Highway Division HQ at Salinas, Capt. Rivera ordered Lt. Lugo to assign Agent Padilla to supervise patrol shifts thereby ensuring that Agent Padilla and Lt. Lugo would have to work together. *Id.* at 8. This decision was carried out over the objections of all supervisory personnel in that meeting. *Id.* The end result was that Lt. Lugo had been ordered by Capt. Rivera to continue working with Agent Padilla despite their unfriendly past. *Id.* at 8.

On February 8, 2013, Lt. Lugo filed a complaint against Capt. Rivera alleging that Agent Padilla was creating a hostile work environment for him and that she should not be supervising other employees. Docket No. 1, at 8. After filing the administrative complaint, and without any explanation, Lt. Lugo was transferred to the Santa Isabel District in Ponce. *Id.* at 9. Although Lt. Lugo was being transferred closer to home, he was assigned the position of Assistant Director and given duties that were below his rank. *Id.* at 9. Lt. Lugo was also excluded from monthly officer meetings, and was isolated from any administrative decisions. *Id.* at 9. While in Ponce, there were instances in which he was called to work only to be sent back home quickly after he arrived. *Id.* at 9. On March 7, 2013, he filed another complaint alleging harassment, hostile work environment, and violation of his civil rights. *Id.* at 9-10. This complaint, however, never received a tracking number. *Id.* at 10. Four days later, Lt. Lugo appealed his transfer to Ponce. *Id.* at 10. In March 20, 2013, Lt. Lugo signed and filed an EEOC complaint alleging sex discrimination and retaliation. *Id.* at 10. Two months later Inspector George Marrero ("Insp. Marrero") summoned Lt. Lugo and asked him to drop all charges against Agent Padilla. *Id.* at 10. After the meeting with Insp. Marrero, Lt. Lugo's complaint against Agent Padilla received no further consideration. *Id.* at 10. On a document supporting PRPD's decision to transfer Lt. Lugo, the PRPD contended that Lt. Lugo's transfer was justified as he needed to be separated from Agent Padilla while she was being investigated. *Id.* at 10-11.

On November 26, 2013, The EEOC issued a Letter of Determination against the PRPD. *Id.* at 11-12. The PRPD rejected the letter and all of its recommendations. *Id.* at 12. On January 27. 2014, the then Superintendent James Tuller Cintron dismissed Lt. Lugo's complaint against

Agent Padilla. *Id.* at 12. Meanwhile, Agent Padilla's December 2012 complaint prevented Lt. Lugo from obtaining a promotion and corresponding salary increase. *Id.* at 13. Additionally, while the discrimination complaints were being processed, there were instances in which Capt. Rivera and Lt. Reyes ridiculed Lt. Lugo in front of other agents. *Id.* at 13. On April 2, 2014, Lt. Lugo filed another complaint before the EEOC alleging retaliation for filing earlier complaints against the PRPD. *Id.* at 14. The ridiculing of Lt. Lugo continued throughout the complaint adjudication process. *Id.* at 14. Finally on August 20, 2014, the EEOC issued a right to sue letter allowing Lt. Lugo to file the instant suit. *Id.* at 14.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). The First Circuit has cautioned against

confounding the plausibility standard with the likely success on the merits, explaining that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556). Even taking plaintiff's well pleaded allegations as true, however, Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Likewise, unadorned factual statements as to the elements of the cause of action are insufficient as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

## ANALYSIS [4]

Defendants argue that Plaintiffs' claims should be dismissed: 1) because of sovereign immunity, and 2) because Plaintiffs have failed to sufficiently plead their claims. For each of Plaintiffs' claims, the Court will first analyze whether the claims should be dismissed due to sovereign immunity. Then, the Court will analyze the surviving claims under the 12(b)(6) standard.

---

[4] Plaintiffs did not clearly specify as to what capacity they were seeking redress from Defendants. Docket No. 1. Thus, the Court analyzes all claims being brought against Individual Defendants in both their official and personal capacities.

**I. 42 U.S.C. § 1983**

Plaintiffs bring forth Section 1983 claims against Defendants arguing that they violated Lt. Lugo's constitutional rights. Docket No. 1, at 4, 7, 8, 9-10, 12, 17-18. Defendants contend that they are entitled to sovereign immunity and, that alternatively, the PRPD is not a "person" within the meaning of Section 1983. Docket No. 13, at 19-21. The Court GRANTS Defendants' Motion to Dismiss as to Plaintiffs' Section 1983 claims against the PRPD and the Individual Defendants in their official capacity based on sovereign immunity. The Court DENIES Defendants' Motion to Dismiss as to Plaintiffs' Section 1983 monetary claims against the Individual Defendants in their personal capacity.

**A. State Sovereign Immunity**

The Eleventh Amendment bars suits seeking monetary damages against a State in federal court, unless the State has waived its sovereign immunity, or Congress has expressly overridden it. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000). It is well settled law that Eleventh Amendment immunity extends to "alter egos" or instrumentalities of the State. *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir. 2003). Specifically, this Court has held that the PRPD is an "alter ego" of the State and thus, immune from monetary liability in federal court. *Cestero v. Rosa*, 996 F. Supp. 133, 142–43 (D.P.R. 1998); *Sanchez Ramos v. Puerto Rico Police Dept.*, 392 F.Supp.2d 167, 177 (D.P.R. 2005); *Nieves Cruz v. Com. of Puerto Rico*, 425 F. Supp. 2d 188, 192 (D.P.R. 2006); *see also Reyes v. Supervisor of Drug Enf't Admin.*, 834 F.2d 1093, 1097-98 (1st Cir. 1987) (noting that damages against the PRPD are precluded by the Eleventh Amendment).

Likewise, state officials in their official capacities are considered instrumentalities of the State, as a suit against the state official in his or her official capacity is a suit against the State. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985); *Pagan-Garcia v. Rodriguez*, No. CIV. 14-1385 DRD, 2015 WL 5084640, at *6 (D.P.R. Aug. 27, 2015). In the instant suit, Plaintiffs are seeking monetary damages and injunctive relief from Defendants.[5] Docket No. 1, at 19. Applying the principles stated above, Eleventh Amendment immunity bars Section 1983 claims seeking monetary damages brought forth against the PRPD and Individual Defendants in their official capacity.[6] Accordingly, Section 1983 claims against the PRPD and Individual Defendants in their official capacity are DISMISSED *with prejudice*.

**B. 12(b)(6)-Motion to Dismiss**

In contrast, government officials can be liable for Section 1983 claims in their personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *see Lockhart–Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007). Specifically, Section 1983 "affords redress against a person, who under color of state law, deprives another person of any federal constitutional or statutory right." *Burgos v. Fontanez-Torres*, 951 F. Supp. 2d 242, 249

---

[5] As explained in greater detail in Section IV, *supra*, at 17, Plainitffs' claims for injunctive relief go forward.

[6] Since State sovereign immunity acts as a jurisdictional bar, the Court need not decide whether the PRPD is a "person" within the meaning of Section 1983 as the PRPD is immune from suit. *See Reyes-Reyes v. Toledo-Davila*, 754 F. Supp. 2d 367, 371 (D.P.R. 2010); *cf. Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000).

(D.P.R. 2013) (citation omitted). When assessing Section 1983 liability, courts must first address: "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

In the instant case, Plaintiffs allege deprivations of Lt. Lugo's First, Fifth, and Fourteenth Amendment rights. Docket No. 1, at 20.[7] After analyzing the complaint, the Court finds that Plaintiffs plead sufficient facts to "raise the right to relief" under Section 1983 claim "above a speculative level." *Twombly*, 550 U.S. at 544. Thus, the Section 1983 claim survives as to the Individual Defendants in their personal capacity.[8]

Accordingly, Defendants Motion to Dismiss is DENIED as to the Section 1983 claims against the Individual Defendants in their personal capacity.

## II. Title VII of the Civil Rights Act of 1964

Plaintiffs also claim that Defendants violated Title VII on the basis of gender discrimination, sexual harassment, hostile work environment and retaliation. Docket No. 1, at 20. Defendants contend that all Title VII claims should be dismissed because Defendants are entitled to Eleventh Amendment immunity, or that Plaintiffs failed to state a claim in which relief can be granted. Docket No. 13, at 6-13, 19-21. The Court will address each argument in turn.

---

[7] Although the Plaintiff may not have plead to violations of specific constitutional clauses, the Court must take "the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in the plaintiff's favor." *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008).

[8] By not dismissing the claim, the Court is not endorsing its probability of success.

**A. State Sovereign Immunity**

As stated above, Eleventh Amendment immunity acts as a bar on monetary claims against a State in federal court. *Will*, 491 U.S. at 66; *Baker*, 210 F.3d at 41. Congress, however, can expressly abrogate a States' sovereign immunity.[9] *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 885 n. 6 (1st Cir. 1988) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57 (1976)). The Supreme Court in *Fitzpatrick* held that Congress in exercising its power under Section 5 of the Fourteenth Amendment abrogated States' sovereign immunity in Title VII claims. *Fitzpatrick*, 427 U.S. at 456. As a result of this exception, plaintiffs can sue state governments in federal court under Title VII. *See e.g.*, *Espinal–Dominguez v. Commonwealth of Puerto Rico*, 352 F.3d 490 (1st Cir. 2003); *Rey–Cruz v. Forensic Sci. Inst.*, 794 F. Supp. 2d 329, 336 (D.P.R. 2011); *Sanchez Ramos v. Puerto Rico Police Dep't*, 392 F. Supp. 2d 167, 179 (D.P.R. 2005). Here, Lt. Lugo claims that he has been discriminated against on the basis of sex, in violation of Title VII. Docket No. 1. Since Congress intended to abrogate States' Eleventh Amendment immunity on Title VII cases, the PRPD and Individual Defendants in their official capacity are not afforded protection under sovereign immunity. *Espinal–Dominguez*, 352 F.3d at 490; *see Fitzpatrick*, 427 U.S. at 445.

Thus, the Court finds that the Title VII claims against the PRPD and Individual Defendants in their official capacity are not barred under the doctrine of Eleventh Amendment immunity.

---

[9] "[I]n enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 n.9 (1976) (citing H.R. Rep. No. 92-238, p. 19 (1971); S. Rep. No. 92-415, pp. 10-11 (1971). *Cf. National League of Cities v. Usery*, 426 U.S. 833 (1976)).

B. 12(b)(6)-Motion to Dismiss

Title VII prohibits an employer from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin . . . ." *See* 42 U.S.C. § 2000e–2(a). Upon a thorough review of Plaintiffs' complaint, Docket No. 1, and taking all well pleaded allegations as true, the Court finds that the Plaintiffs provide sufficient facts to state a case that entitles them to relief. *See Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Plaintiffs plead each claim in a non-conclusory manner. Docket No. 1. As such, the claims must survive the motion to dismiss stage. *See Iqbal*, 129 S. Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical . . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

Accordingly, the Court DENIES Defendants' Motion to Dismiss the Title VII claims against the PRPD and Individual Defendants in their official capacity.[10]

Turning to the Individual Defendants in their personal capacity, the Court DISMISSES the Title VII claims against them. Under Title VII, "employers" are liable if they "discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Title VII, defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The First Circuit has clarified that Title VII liability does not attach to individual employees. *Fantini v. Salem State*

[10] A suit against an Individual Defendant in his or her official capacity is a suit against the State. *In re Perry*, 882 F.2d 534, 538 (1st Cir. 1989). Thus, the Title VII claim survives as to the Individual Defendants in their official capacity.

*Coll.*, 557 F.3d 22, 28 (1st Cir. 2009) (indicating that "[t]he statutory scheme [of Title VII] itself indicates that Congress did not intend to impose individual liability on employees.") (quotations omitted). In this case, Plaintiffs advance Title VII claims against the Individual Defendants in their personal capacity. Docket No. 1. Those claims are not proper since individual defendants are not considered "employers" within the meaning of Title VII. *Fantini*, 557 F.3d at 28.

Thus, the Court GRANTS Defendants' Motion to Dismiss the Title VII claims as to the Individual Defendants in their personal capacity.

## III. State Law Claims

Plaintiffs also seek supplemental jurisdiction pursuant to 28 U.S.C. § 1367 on state law claims stemming from Law 115, Law 100, Law 69, Law 17, and Article 1802 of the Puerto Rico Civil Code. Docket No. 1. The Court GRANTS Defendant's Motion to Dismiss as to the PRPD and Individual Defendants in their official capacity on all state claims based on Eleventh Amendment immunity and GRANTS in Part and DENIES in part as to the Individual Defendants in their personal capacity.

### A. State Sovereign Immunity

The Court has supplemental jurisdiction to hear state law claims when, and if, the federal court has original jurisdiction in the action and the claims come from a "common nucleus of operative facts." 28 U.S.C. § 1367; *see also Allstate Interiors & Exteriors, Inc. v. Stonestreet Const.*, LLC, 730 F.3d 67, 72 (1st Cir. 2013). Supplemental jurisdiction under § 1367, however, does not override Eleventh Amendment immunity against subjecting a State to suit in federal courts.

*Pagan v. Puerto Rico*, 991 F. Supp. 2d 343, 346 (D.P.R. 2014). Only Congress or an unequivocal consent from a State can override that State's sovereign immunity. *Id.* It is clear that Congress has not abrogated a State's Eleventh Amendment immunity involving state law claims. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541 (2002). However, Puerto Rico has waived its sovereign immunity in its own courts. *Díaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 33 (1st Cir. 2006). Nonetheless, that waiver authorizing suits against the government of Puerto Rico in Puerto Rico's courts does not extend to state law claims brought against the government of Puerto Rico, and its instrumentalities, in federal court. *Diaz v. Dep't of Educ.*, 823 F. Supp. 2d 68, 76 (D.P.R. 2011) (citing *Díaz–Fonseca*, 451 F.3d at 34). Thus, state law claims brought in federal court against the PRPD and the Individual Defendants in their official capacity are barred under the Eleventh Amendment, absent any waivers.

Article 1802 of the Puerto Rico Civil Code does not state an unequivocal waiver of Puerto Rico's sovereign immunity for suits in federal court. P.R. Laws Ann. tit. 31, § 5141. Likewise, Law 115, Law 100, Law 69 and Law 17 do not give Plaintiffs consent to bring those claims against the government of Puerto Rico and the PRPD in federal court. *Diaz*, 823 F. Supp. 2d at 77 (Law 115); *Torres-Santiago v. Alcaraz-Emmanuelli*, 553 F. Supp. 2d 75, 86 (D.P.R. 2008) (Law 100); *Huertas-Gonzalez v. Univ. of Puerto Rico*, 520 F. Supp. 2d 304, 315-16 (D.P.R. 2007) (Law 69 & 17). Thus, all state claims against the PRPD and Individual Defendants in their official capacity are DISMISSED *with prejudice*.

**B. 12(b)(6)-Motion to Dismiss**

**1. Individual Defendants in Personal Capacity Claims**

Defendants allege that all state law claims should be dismissed against them because: Individual Defendants are not employers (Law 115, Law 100); Individual Defendants are not liable for the same conduct proscribed in Title VII being raised again in state claims (Law 69, Law 17); and Plaintiffs cannot bring a cause of action under Article 1802 for the same discriminatory conduct alleged in the other state law claims. Docket No. 13, at 22-25. The Court will address each state law claim in turn.

Article 1802 is Puerto Rico's general torts statute. *Maldonado-Gonzalez v. Puerto Rico Police*, 927 F. Supp. 2d 1, 13 (D.P.R. 2013). The Supreme Court of Puerto Rico addressed in *Santini* the interplay between Article 1802 and other specific employment statutes, which this district has followed. *Pena-Alcantara v. Corr. Health Servs., Corp.*, No. CIV. 07-1651CCC, 2009 WL 890467, at *5-*6 (D.P.R. Mar. 24, 2009); *Rosario v. Valdes*, No. CIV. 07-1508CCC, 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008) (citing *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1 (1994)). In *Santini*, the court noted that as a matter of public policy the specific employment statutes "surpass general safeguards . . . offered . . . by ordinary civil and penal statutes" *Santini*, 137 D.P.R. at 5 n.3. As a result, this district has borrowed its rationale from the Puerto Rico Supreme Court and determined that claimants are barred from bringing an Article 1802 action to the extent that specific labor laws cover the same conduct alleged in the tort claim. *See Rosario*, 2008 WL 509204, at *2. In the instant case, Plaintiffs make it clear that they are utilizing the same discriminatory conduct as a factual basis to support their Article 1802 claim. Docket No. 1, at 19.

("Plaintiffs reallege each and every preceding allegation as fully set forth herein and incorporate them by reference hereto."). Since Plaintiffs are utilizing the same conduct to bring claims under the specific labor statutes in conjunction with Article 1802, their Article 1802 claims are barred. As a result, Plaintiffs Article 1802 claims against Defendants are DISMISSED *with prejudice*.

Law 115 is Puerto Rico's anti-retaliation statute. 29 L.P.R.A. § 194. Law 115 "protects employees that collaborate in investigations or offer testimony before an administrative, judicial or legislative forum, from adverse actions by their employers." *Salgado–Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 177 (D.P.R. 2008). Puerto Rico's Supreme Court has not considered the question of whether there is individual liability under Law 115. Consequently, this district has attempted to answer this question. *Hernandez-Mendez v. Rivera*, No. CIV. 15-1147 GAG, 2015 WL 5770087, at *13 (D.P.R. Sept. 30, 2015). In doing so, courts in this district have sought guidance from the findings of the Puerto Rico Court of Appeals in *Vargas Santiago v. Álvarez Moore*. 2006 WL 3694659 (P.R. Cir. 2006) (finding no individual liability under Law 115). Applying *Vargas Santiago*, this district has taken the position that there is no individual liability under Law 115. *See e.g.*, *Rivera*, 2015 WL 5770087, at *13; *Otero–Merced v. Preferred Health Inc.*, 680 F.Supp.2d 388, 393 (D.P.R. 2010). In accordance with this Courts' precedent, the claims against the Individual Defendants in their personal capacity under Law 115 are DISMISSED *with prejudice*.

Law 100 seeks to prevent discrimination in the workplace by reason of age, race, color, religion, gender, social or national origin or social condition. *See* P.R. Laws Ann. tit. 29 § 146. The Puerto Rico Supreme Court has expressly considered the question of supervisor liability under Law 100. *Rosario Toledo v. Distribuidora Kikuet, Inc.*, 151 D.P.R. 634, 2000 WL 943550, 2000 JTS 108

(2000). In *Distribuidora Kikuet*, the Court expanded the reach of Law 100 to include the actual employer, the owner and the president of the corporation, or any other person responsible for the illegal conduct, without any distinction. *Pacheco Bonilla v. Tooling & Stamping, Inc.*, 281 F. Supp. 2d 336, 339 (D.P.R. 2003). Therefore, under Law 100, employers and supervisors can be held individually liable for conduct violating Law 100. *Id.* Here, Plaintiffs allege that Individual Defendants were the wrongdoers by discriminating against Lt. Lugo on the basis of sex. Docket No. 1, at 4-5, 19-20. Accordingly, the Court DENIES Defendants' request for dismissal of Plaintiffs' Law 100 claims against the Individual Defendants in their personal capacity.

Law 69 protects against employment discrimination on the basis of gender. P.R. Laws Ann. tit. 29, § 1321. Similarly, Law 17 prohibits sexual harassment in the workplace. P.R. Laws Ann. tit. 29, § 155. Since both laws protect against discrimination on the basis of sex, it follows that Law 69 and Law 17 prohibitions will overlap with each other and therefore, will be interpreted the same way when determining who may be sued for their violation. *Miro Martinez v. Blanco Velez Store, Inc.*, 393 F. Supp. 2d 108, 114 (D.P.R. 2005). Furthermore, this district in *Miro Martinez* explained that "Law 17, Law 69, and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors." *Id.* Accordingly, the Court looks upon Law 100 to determine if Law 69 and Law 17 support individual liability. *Id.*; *see Beauchamp v. Holsum Bakers*, 116 D.P.R. 522, 526–27, 1985 WL 301220 (1985); *Suárez Ruiz v. Figueroa Colón*, 145 D.P.R. 142 (1998); *see also Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 61 (1st Cir. 2005) (noting that Law 100 is read to be interpreted *pari materia* with Law 69). Thus, since Law 100 supports individual liability, then Law 69 and Law 17 support individual liability as well.

Accordingly, the Court DENIES Defendants' request for dismissal of Plaintiffs' Law 69 and Law 17 claims against the Individual Defendants in their personal capacity.

**IV. Injunctive Relief**

Plaintiffs also seek injunctive relief from Defendants. Docket No. 1, at 19-20. Specifically, Plaintiffs seek 1) an investigation into the alleged frivolous charges made by Agent Padilla; 2) to transfer back to the Salinas Highway Division as First Lieutenant with corresponding salary increase; and 3) an annual anti-discrimination training. *Id.* Defendants, however, did not provide a reason why the claims for injunctive relief should be dismissed. Accordingly, Defendants' argument is waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (internal citations omitted)).[11] Thus, Plaintiffs' claims for injunctive relief remain.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. Specifically:

---

[11] Even if the argument is not waived, the Court would still be persuaded to let the injunctive relief claims survive. While it is true that Eleventh Amendment immunity bars monetary damages against the State absent specific criteria, prospective injunctive relief does not have that same constraint. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 24 (1st Cir. 2007) (citing *Ex Parte Young*, 209 U.S. 123, 155 (1908)). As such, prospective injunctive relief sought under federal law against the Individual Defendants in their official capacity is not barred. *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015).

1. Plaintiffs' monetary Section 1983 claims are hereby DISMISSED *with prejudice* as to the PRPD and the Individual Defendants in their official capacity. Plaintiffs' Section 1983 claims as to the Individual Defendants in their personal capacity remain.
2. Plaintiffs' Title VII claims are hereby DISMISSED *with prejudice* as to the Individual Defendants in their personal capacity. Plaintiffs' Title VII claims as to the PRPD and the Individual Defendants in their official capacity remain.
3. Plaintiffs' state law claims are hereby DISMISSED *with prejudice* as to the PRPD and the Individual Defendants in their official capacity. Likewise, Article 1802, and Law 115 state law claims are hereby DISMISSED *with prejudice* as to the Individual Defendants in their personal capacity. Plaintiffs' Law 100, Law 69, and Law 17 state claims against the Individual Defendants in their personal capacity remain.
4. Plaintiffs' claims seeking prospective injunctive relief still remain.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of February, 2016.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge